STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
ELLYN MARCUS LINDSAY (Cal. Bar No. 116847)
BYRON J. MCLAIN (Cal. Bar No. 257191)
Assistant United States Attorneys
Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-2041/0637
      Facsimile:  (213) 894-6269
      E-mail:     Ellyn.Lindsay@usdoj.gov
                  Byron.McLain@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 14-282-R |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:   October 14, 2014<br>Trial Time:   9:00 a.m. |
| DAVID PRITCHARD, et al., | Location:     Courtroom of the<br>Hon. Manuel Real |
| Defendant. | |

Plaintiff, United States of America, by and through its counsel of record, Assistant United States Attorneys Ellyn Marcus Lindsay and Byron J. McLain, hereby submits its trial memorandum.  The Government's Trial Memorandum is based on the attached memorandum and the files and records in this case.

///

///

///

The government respectfully requests leave of the Court to file additional memoranda or to supplement this memorandum should issues arise during trial that require legal analysis or explanation.

Dated: October 7, 2014                 Respectfully submitted,

                                       STEPHANIE YONEKURA
                                       Acting United States Attorney

                                       ROBERT E. DUGDALE
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                              /s/ Byron J. McLain
                                       _____
                                       ELLYN MARCUS LINDSAY
                                       BYRON J. MCLAIN
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    STATUS OF THE CASE.............................................1

II.   THE INDICTMENT.................................................2

III.  STATEMENT OF FACTS............................................3

      A.    The Scheme to Defraud...................................3

      B.    Misuse of Victim Investors' Funds.......................4

      C.    Misrepresentations and False Statements to Investors......5

      D.    Offering and Selling Unregistered Securities.............7

      E.    Defendants' Admissions to the FBI.......................7

IV.   ELEMENTS AND PERTINENT LAW OF WIRE AND MAIL FRAUD.............9

      A.    Essential Elements of Offense...........................9

      B.    Knowledge.............................................12

      C.    Scheme to Defraud.....................................12

      D.    Fraudulent Intent.....................................12

      E.    Materiality...........................................14

      F.    False and Fraudulent Pretenses........................14

      G.    Use of Wire Transmissions.............................15

      H.    Use of the Mails......................................15

      I.    Possible Defenses and/or Obfuscation..................16

            1.    Victim Negligence Not a Defense................16

            2.    Good Faith Belief.............................16

V.    ELEMENTS AND PERTINENT LAW OF OFFERING AND SELLING
      UNREGISTERED SECURITIES......................................16

i

**TABLE OF CONTENTS (CONTINUED)**

                                                                      **PAGE**

A.   Essential Elements of Offense...........................16

B.   Willful.................................................17

VI.  EVIDENTIARY ISSUES..........................................18

A.   Expert Testimony or Testimony Based on Specialized
     Knowledge...............................................18

B.   Charts and Summaries....................................19

     1.   Summary Charts.....................................20

     2.   Summary Witnesses..................................21

C.   Authentication and Foundation...........................22

     1.   Fed. R. Evid. 901..................................22

     2.   Audio and Video Recordings.........................23

     3.   Written and Electronic Communications..............24

     4.   Business Records...................................26

          a.   Foundational Requirements.....................26

          b.   Authentication by Declaration.................26

     5.   Certified Public Records...........................27

     6.   Duplicates.........................................27

D.   Victim Testimony........................................27

E.   Defendant's Statements..................................28

F.   Transcripts of Recorded Conversations...................30

G.   Rule 404(b) Evidence....................................30

H.   Cross-Examination.......................................31

I.   Character Evidence......................................32

J.   Reciprocal Discovery....................................34

VII. Conclusion..................................................35

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                          PAGE(S)

Barsky v. United States,
      339 F.2d 180 (9th Cir. 1964) ...........................20

Bourjaily v. United States,
      483 U.S. 171 (1987) ....................................26

Boyd v. San Francisco,
      576 F.3d 938 (9th Cir. 2009) ...........................31

Bruton v. United States,
      391 U.S. 123 (1968) ....................................28

Carpenter v. United States,
      484 U.S. 19 (1987) .................................12, 13

Crawford v. Washington,
      541 U.S. 36 (2004) .....................................27

Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,
      466 F.2d 722 (7th Cir. 1972) ...........................22

Gallego v. United States,
      276 F.2d 914 (9th Cir. 1960) ...........................23

Gonzales v. Arrow Financial Services, LLC,
      660 F.3d 1055 (9th Cir. 2011) ..........................14

Irwin v. United States,
      338 F.2d 770 (9th Cir. 1964) ...........................12

La Porta v. United States,
      300 F.2d 878 (9th Cir. 1962) ...........................26

Lemon v. United States,
      278 F.2d 369 (9th Cir. 1960) ...........................16

Lorraine v. Markel America Insurance Co.,
      241 F.R.D. 534 (D. Md. 2007) .......................24, 25

Michelson v. United States,
      335 U.S. 469 (1948) ................................32, 33

iii

**TABLE OF AUTHORITIES (CONTINUED)**

<u>FEDERAL CASES</u>                                                          PAGE(S)

<u>Miller v. Thane Intern</u>,
    519 F.3d 879 (9th Cir. 2008) ..........................14

<u>Neder v. United States</u>,
    527 U.S. 1 (1999) ................................10, 14

<u>Nelson v. O'Neil</u>,
    402 U.S. 622 (1971) ...................................28

<u>SEC v. Platform Wireless International Corp.</u>,
    617 F.3d 1072 (9th Cir. 2010) .........................17

<u>Schmuck v. United States</u>,
    489 U.S. 705 (1989) ...................................11

<u>Tamarin v. Adam Caterers, Inc.</u>,
    13 F.3d 51 (2d Cir. 1993) .............................21

<u>Territory of Guam v. Ojeda</u>,
    758 F.2d 403 (9th Cir. 1985) ..........................28

<u>United States v. Aceves-Rosales</u>,
    832 F.2d 1155 (9th Cir. 1987) .........................34

<u>United States v. Amrep Corp. (Amrep I)</u>,
    545 F.2d 797 (2d Cir. 1976) ...........................13

<u>United States v. Andaverde</u>,
    64 F.3d 1305 (9th Cir. 1995) ..........................28

<u>United States v. Benny</u>,
    786 F.2d 1410 (9th Cir. 1986) .........................16

<u>United States v. Binder</u>,
    769 F.2d 595 (9th Cir. 1985) ..........................19

<u>United States v. Black</u>,
    767 F.2d 1334 (9th Cir. 1985) .................23, 31, 32

<u>United States v. Bland</u>,
    961 F.2d 123 (9th Cir. 1992) ..........................26

**TABLE OF AUTHORITIES (CONTINUED)**

<u>FEDERAL CASES</u>                                                              PAGE(S)

United States v. Brien,
   617 F.2d 299 (1st Cir. 1980) ...........................16

United States v. Burreson,
   643 F.2d 1344 (9th Cir. 1981) .....................28, 29

United States v. Carpenter,
   95 F.3d 773 (9th Cir. 1996) ...........................14

United States v. Caswell,
   825 F.2d 1228 (8th Cir. 1989) .........................21

United States v. Catabran,
   836 F.2d 453 (9th Cir. 1988) ..........................31

United States v. Cervantes-Flores,
   421 F.3d 825 (9th Cir. 2005) ..........................27

United States v. Chu Kong Yin,
   935 F.2d 990 (9th Cir. 1991) ..........................22

United States v. Ciccone,
   219 F.3d 1078 (9th Cir. 2000) .........................10

United States v. Collicott,
   92 F.3d 973 (9th Cir. 1996) ...........................29

United States v. Cuevas,
   847 F.2d 1417 (9th Cir. 1988) .........................19

United States v. Cuozzo,
   962 F.2d 945 (9th Cir. 1992) ..........................31

United States v. Curtin,
   489 F.3d 935 (9th Cir. 2007) ......................30, 31

United States v. De Peri,
   778 F.2d 963 (3d Cir. 1985) ...........................21

United States v. Fleishman,
   684 F.2d 1329 (9th Cir. 1982) .........................19

**TABLE OF AUTHORITIES (CONTINUED)**

<u>FEDERAL CASES</u>                                                    **PAGE(S)**

<u>United States v. Gardner</u>,
  611 F.2d 770 (9th Cir. 1980) ........................20, 21

<u>United States v. Gay</u>,
  967 F.2d 322 (9th Cir. 1992) ........................13, 32

<u>United States v. Gravenmeir</u>,
  121 F.3d 526 (9th Cir. 1997) ...........................12

<u>United States v. Green</u>,
  745 F.2d 1205 (9th Cir. 1984) ..........................12

<u>United States v. Hackett</u>,
  638 F.2d 1179 (9th Cir. 1980) ..........................28

<u>United States v. Hagege</u>,
  437 F.3d 943 (9th Cir. 2006) ...........................27

<u>United States v. Halbert</u>,
  640 F.2d 1000 (9th Cir. 1981) ..........................14

<u>United States v. Hankey</u>,
  203 F.3d 1160 (9th Cir. 2000) ..........................19

<u>United States v. Hanley</u>,
  190 F.3d 1017 (9th Cir. 1999) ..........................16

<u>United States v. Hearst</u>,
  563 F.2d 1331 (9th Cir. 1977) ..........................32

<u>United States v. Johnson</u>,
  594 F.2d 1253 (9th Cir. 1979) ..........................20

<u>United States v. Jones</u>,
  472 F.3d 1136 (9th Cir. 2007) ..........................13

<u>United States v. Jones (Jones II)</u>,
  425 F.2d 1048 (9th Cir. 1970) ..........................13

<u>United States v. King</u>,
  587 F.2d 956 (9th Cir. 1978) ...........................24

### TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL CASES**                                                           **PAGE(S)**

United States v. Lemire,
   720 F.2d 1327 (D.C. Cir. 1983) .........................22

United States v. Luongo,
   11 F.3d 7 (1st Cir. 1993) .............................15

United States v. Lyons,
   472 F.3d 1055 (9th Cir. 2007) ......................11, 14

United States v. Marin,
   669 F.2d 73 (2d Cir. 1982) ............................29

United States v. McCollom,
   664 F.2d 56 (5th Cir. 1981) ...........................33

United States v. Meyers,
   847 F.2d 1408 (9th Cir. 1988) .........................20

United States v. Miranda-Uriarte,
   649 F.2d 1345 (9th Cir. 1981) .........................31

United States v. Moore,
   208 F.3d 577 (7th Cir. 2000) ..........................34

United States v. Munoz,
   233 F.3d 1117 (9th Cir. 2000) .........................11

United States v. Noushfar,
   78 F.3d 1442 (9th Cir. 1996) ..........................30

United States v. Omer,
   395 F.3d 1087 (9th Cir. 2005) .........................10

United States v. Oren,
   893 F.2d 1057 (9th Cir. 1990) ......................13, 16

United States v. Ortega,
   203 F.3d 675 (9th Cir. 2000) ..........................29

United States v. Patterson,
   819 F.2d 1495 (9th Cir. 1987) .........................19

**TABLE OF AUTHORITIES (CONTINUED)**

<u>**FEDERAL CASES**</u>                                                      **PAGE(S)**

<u>United States v. Peterson</u>,
    538 F.3d 1064 (9th Cir. 2008) ..........................14

<u>United States v. Poschwatta</u>,
    829 F.2d 1477 (9th Cir. 1987) ..........................20

<u>United States v. Radseck</u>,
    718 F.2d 233 (7th Cir. 1983) ...........................20

<u>United States v. Reyes</u>,
    577 F.3d 1069 (9th Cir. 2009) ..........................18

<u>United States v. Rubino</u>,
    431 F.2d 284 (6th Cir. 1970) ...........................21

<u>United States v. Sayakhom</u>,
    186 F.3d 928 (9th Cir. 1999) ...........................13

<u>United States v. Scholl</u>,
    166 F.3d 964 (9th Cir. 1999) ...........................34

<u>United States v. Shirley</u>,
    884 F.2d 1130 (9th Cir. 1989) ..........................21

<u>United States v. Siddiqui</u>,
    235 F.3d 1318 (11th Cir. 2000) .........................25

<u>United States v. Silverman</u>,
    449 F.2d 1341 (2d Cir. 1971) ...........................20

<u>United States v. Sivils</u>,
    960 F.2d 587 (6th Cir. 1992) ...........................24

<u>United States v. Skillman</u>,
    922 F.2d 1370 (9th Cir. 1990) ..........................27

<u>United States v. Smith</u>,
    591 F.3d 974 (8th Cir. 2010) ...........................24

<u>United States v. Soulard</u>,
    730 F.2d 1292 (9th Cir. 1984) ..........................22

**TABLE OF AUTHORITIES (CONTINUED)**

**FEDERAL CASES**                                                    **PAGE(S)**

United States v. Sullivan,
  522 F.3d 967 (9th Cir. 2008) ...........................13

United States v. Tarallo,
  380 F.3d 1174 (9th Cir. 2004) .........................18

United States v. Taylor,
  716 F.2d 701 (9th Cir. 1983) ..........................23

United States v. Turner,
  528 F.2d 143 (9th Cir. 1975) ..........................30

United States v. Utz,
  886 F.2d 1148 (9th Cir. 1989) .........................12

United States v. Vaughn,
  797 F.2d 1485 (9th Cir. 1986) .........................16

United States v. Warren,
  25 F.3d 890 (9th Cir. 1994) ...........................28

United States v. Willis,
  759 F.2d 1486 (11th Cir. 1985) ........................29

United States v. Woods,
  335 F.3d 993 (9th Cir. 2003) ....................10, 11

**FEDERAL STATUTES**

15 U.S.C. § 77e.................................2, 3, 17

15 U.S.C. § 77x........................................2

18 U.S.C. § 1341...................................2, 15

18 U.S.C. § 1343 ..................................2, 15

18 U.S.C. § 1349 ......................................2

**FEDERAL RULES**

Fed. R. Evid. 104.....................................26

Fed. R. Evid. 106.....................................29

ix

### TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL RULES**                                                                  **PAGE(S)**

Fed. R. Evid. 401.......................................................24

Fed. R. Evid. 403.......................................................31

Fed. R. Evid. 404(b)................................................30, 32

Fed. R. Evid. 405(a)....................................................33

Fed. R. Evid. 608.......................................................32

Fed. R. Evid. 611(a)...........................................20, 21, 31

Fed. R. Evid. 612.......................................................25

Fed. R. Evid. 702.......................................................19

Fed. R. Evid. 703.......................................................19

Fed. R. Evid. 704.......................................................19

Fed. R. Evid. 801...................................................PASSIM

Fed. R. Evid. 803(5)....................................................25

Fed. R. Evid. 803(6)................................................26, 27

Fed. R. Evid. 803(8)....................................................27

Fed. R. Evid. 804.......................................................25

Fed. R. Evid. 807.......................................................25

Fed. R. Evid. 901...................................................PASSIM

Fed. R. Evid. 902...................................................26, 27

Fed. R. Evid. 1003.............................................23, 25, 27

Fed. R. Evid. 1006.................................................19, 20

Fed. R. Crim. P. 16.................................................... 34

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    STATUS OF THE CASE**

1.    Jury trial is set for October 14, 2014 at 9:00 a.m.  The estimated time for the government's case-in-chief is ten court days.

2.    The case generally involves allegations that defendants David Pritchard ("defendant Pritchard"), Christopher Blauvelt ("defendant Blauvelt"), Cherie Brown ("defendant Brown"), and Greg Pusateri ("defendant Pusateri") (collectively "defendants") were involved in a pre-IPO investment scam of Gigapix Studios ("Gigapix" or "the Company") and a movie investment scam involving OZ3D LLC ("OZ3D").  The defendants raised over $22 million from approximately 750 investors, and all of the investors lost virtually all of their money.  Defendants Blauvelt and Pritchard were the two main operators of Gigapix, and defendants Brown and Pusateri were two of the highest earning salespeople.

3.    The government anticipates calling eighteen witnesses in its case-in-chief.  These witnesses will include two law enforcement officers to testify about their interviews of defendants Pritchard, Blauvelt and Brown; one expert to testify concerning securities law and how the general solicitation of investors involved in this case violated the rules for a private offering; one law enforcement financial analyst to testify about an accounting of the misuse of investor funds by the defendants; six (or fewer) former employees of Gigapix to testify about their roles and experiences at Gigapix; and eight victims to testify about their investments in Gigapix and/or OZ3D LLC based on misrepresentations by the defendants.

4.    Trial by jury has not been waived by any of the four defendants.

5.   The government's witnesses will not require the assistance of interpreters at trial.

**II.   THE INDICTMENT**

The defendants are charged in the 36-count Indictment with violating 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1349 (attempted wire fraud), and 15 U.S.C. §§ 77e and 77x (offer and sale of unregistered securities).

Counts one through twenty-one charge defendants with mail fraud in violation of 18 U.S.C. § 1341, which has the following elements: (1) defendants knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendants acted with the intent to defraud; that is, the intent to deceive or cheat; and (4) defendants used or caused to be used, the mails (including FedEx) to carry out or attempt to carry out an essential part of the scheme.

Counts twenty-two through twenty nine charge defendants with wire fraud and attempted wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, which have the following elements: (1) defendants knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendants acted with the

2

intent to defraud; that is, the intent to deceive or cheat; and (4) defendants used or caused to be used the wires across state or international lines to carry out or attempt to carry out an essential part of the scheme.

Counts thirty through thirty-six charge defendants with engaging in the offer and sale of unregistered securities in violation of 15 U.S.C. §§ 77e and 77x, which has the following elements: (1) defendants directly or indirectly sold securities or offered to sell securities; (2) no registration statement was filed and in effect with the Securities and Exchange Commission as to such securities; (3) interstate transportation or communication or the mails were used in connection with the sale or offer for sale of the securities; and (4) defendant acted willfully.

The Indictment was filed on March 15, 2014, and a copy is attached as Exhibit A to this memorandum.

## III. STATEMENT OF FACTS

### A.   The Scheme to Defraud

In 2002, defendant Blauvelt founded Gigapix, which was supposed to be an animation studio that would produce and distribute television shows and movies.  Defendant Blauvelt served as Chief Executive Officer, Chairman of the Board of Directors, and Chief Financial Officer of the Company.  In June 2006, defendant Pritchard joined Gigapix as its President and Director.  While in charge as the two main operators of Gigapix, defendants Blauvelt and Pritchard hired salespeople to solicit investors in Gigapix and in the movie OZ3D through cold-call telemarketing.

They hired less experienced telemarketers known as "fronters" to cold call investors nationwide using lead lists and scripts.

Interested investors identified by the fronters were sent via FedEx a private placement memorandum and promotional materials for the investments in Gigapix and OZ3D.  Defendant Blauvelt hired more experienced telemarketers known as "closers," to supervise the fronters, contact interested investors identified by the fronters, and convince investors to invest in Gigapix and the film OZ3D.  In particular, defendant Blauvelt hired defendants Pusateri and Brown as "closers" for Gigapix and OZ3D.  Among the many salespeople that worked for Gigapix, defendants Brown and Pusateri were among the highest earning salespeople and had direct interactions with the victim investors in Gigapix and OZ3D referenced in the Indictment.

**B.   Misuse of Victim Investors' Funds**

From June 2006, the defendants and their colleagues raised approximately $22 million for Gigapix and OZ3D from approximately 750 victim investors.  Specifically, Gigapix received around $14 million, and OZ3D received approximately $8 million directly from investors.  Defendants represented to the victim investors that the majority of the money raised for Gigapix would be used by the Company to produce and distribute films.  In reality, however, only about 20 percent of the $14 million raised for Gigapix went toward production and distribution costs for the Company.  The defendants allotted even less to the production of OZ3D, as only 5 percent of the $8 million raised for the movie from victim investors was allotted to OZ3D.  As a result, the OZ3D movie was never produced, and the victims lost all their invested money.

The defendants misappropriated and misused the $22 million from the victim investors on huge commissions, overhead, and personal expenses.  Defendant Blauvelt used investor money for his personal

benefit on $1,200 massages, gifts to his girlfriends, gambling expenses, and personal legal expenses, among other items.  Defendant Pritchard obtained investor money for his personal benefit and used it to purchase lavish meals without justification, expensive artwork, and to make donations to his girlfriend's charities.  Defendants Brown and Pusateri received approximately $650,000 and $575,000 respectively in large commissions from the investments by the victims.

### C.  Misrepresentations and False Statements to Investors

In order to raise the $22 million from the victim investors, the defendants made and/or participated in making misrepresentations and false statements to investors in telephone conversations and through written materials.  These misrepresentations included the following: (i) Gigapix was a financially successful company; (ii) investors in Gigapix and OZ3D would receive high returns on their investments; (iii) the investments in Gigapix and OZ3D had very little or no risk; (iv) investors had to invest quickly because the opportunity to invest in Gigapix and OZ3D would be closing soon; (v) a minimum of 65 percent of investor money in OZ3D would be used to produce and distribute the movie; (vi) only up to 10 percent of investor money in Gigapix and 20 percent of investor money in OZ3D would be used to pay commissions and finder's fees; (vii) Gigapix would go public within a short period of time and active steps were being taken to accomplish this goal; (viii) production on OZ3D had begun; and (ix) investors would receive returns on their investment soon after investing, often within 18 months.  In reality, none of these statements were true.

Instead, when the defendants personally spoke to the victim investors, the defendants failed to mention the following: (i) none

5

of Gigapix's past projects were profitable for the company's investors; (ii) the investments into Gigapix and OZ3D were highly risky; (iii) a substantial portion of the victims' money invested in Gigapix and OZ3D was used to pay commissions to salespeople, telemarketing expenses, and overhead; (iv) only approximately 20 percent of investor money in Gigapix was used for actual production and promotion of movie and television content that would add to the value of Gigapix's stock; (v) less than 5 percent of investor money in OZ3D was used for actual production and promotion of OZ3D; (vi) only very preliminary steps were ever taken for Gigapix to go public; (vii) OZ3D never went into production; and (viii) Gigapix, OZ3D and some of their representatives were the subject of regulatory actions in several states.

In particular, Gigapix and OZ3D received regulatory actions from at least five different states.  In April 2005, the Wisconsin Division of Securities issued an Order of Prohibition against Gigapix and defendant Blauvelt in connection with wrongfully selling securities in Wisconsin.  In September 2008, the Oregon Division of Finance and Corporate Securities issued a cease and desist order against Gigapix and defendant Blauvelt in connection with the unlawful sale of registered securities in Oregon.  In May 2009, the California Department of Corporations entered an order against Gigapix, OZ3D, and defendants Blauvelt and Pusateri in connection with offering and selling unregistered securities and for misrepresenting and omitting material facts in the sale of securities.  In July 2010, the Alabama Securities Division issued an order against Gigapix and defendant Blauvelt in connection with the offer and sale of unregistered securities.  In October 2010, the

Washington Department of Financial Institutions Securities Division entered an order against Gigapix and defendant Blauvelt, alleging that salespeople at Gigapix made misleading statements, such as promising returns on the investment.

The private placement memorandum for Gigapix and OZ3D sent to the victim investors disclosed the state regulatory actions over time to varying degrees.  Most of the investors, however, will testify that they knew nothing about the state regulatory actions before they invested.  These victims will testify that if they had known about these state regulatory issues and the reality of the many other misrepresentations from the defendants, this information would have effected their decisions to invest in Gigapix and OZ3D.

### D.   Offering and Selling Unregistered Securities

The private placement memorandum for Gigapix and OZ3D also clearly describe the securities as unregistered.  The defendants may claim that the unregistered securities are being offered and sold pursuant to an applicable exemption under Rule 506 of Regulation D. In reality, however, the selling and offering of these securities by Gigapix, OZ3D, and the defendants do not qualify for any exemption under Section 5 of the Securities Act of 1933.  No applicable exemption applies because the unregistered securities were offered and sold as a general solicitation to the public, to unaccredited investors, and without providing audited financial statements with the private placement memoranda at issue.

### E.   Defendants' Admissions to the FBI

The defendants also admitted their culpability for the offenses in the Indictment in interviews with the FBI.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Defendant Blauvelt</u>

Defendant Blauvelt participated in two audio recorded interviews by FBI Special Agent Adam Storer ("SA Storer").  Specifically, on March 12, 2012, defendant Blauvelt admitted that Gigapix got into some regulatory issues with the state of California for cold calling. He further stated that Gigapix's previous films were not a financial success and made very little money.  He acknowledged that Gigapix was broke after it had its regulatory and cold calling issues, and Gigapix could not survive without investor funds.  He also stated that the money raised for OZ3D ended up going to Gigapix.   Defendant Blauvelt further acknowledged that the update letters sent to investors contained misstatements, such as claiming that OZ3D was in production.

<u>Defendant Pritchard</u>

FBI Special Agent Eric Potecek interviewed defendant Pritchard on June 5, 2014.  During this interview, defendant Pritchard admitted that Gigapix was not financially sound from around 2010 to 2012. Pritchard said that during this time period, employees were laid off as Gigapix could not afford to pay employee salaries.  Defendant Pritchard also acknowledged that he provided significant direction on how investor funds should be spent.  He also admitted that the salespeople received their information about OZ3D from him.

Defendant Pritchard acknowledged that Gigapix investors received update letters that he and others wrote and mailed, which described what was supposedly occurring at Gigapix.  He acknowledged that in 2010 and 2011, he probably did not provide full and complete information to the investors.  In particular, he acknowledged that OZ3D was never in production and that by 2011, he had serious doubts

8

about OZ3D ever getting made.  Defendant Pritchard advised that if an investor letter said "in production" it would be "obviously misleading."  He later acknowledged that he spoke to approximately twelve to fifteen investors, and he agreed that he said things which were misleading and omitted information about the true state of Gigapix when he spoke to investors.

<u>Defendant Brown</u>

SA Storer interviewed defendant Brown on multiple occasions as well.  Specifically, in an interview on December 15, 2011, defendant Brown admitted that while working for a company called Big Sky Motion Pictures, she was trained on how to raise money from investors for production of independent films.  She admitted that while at Gigapix, defendant Brown heard some salespeople tell investors mis-representations, including that investors would receive returns of ten to twenty times their initial investment.  Defendant Brown also admitted that she knew OZ3D would not be completed within one year.  She also stated that Gigapix raised approximately $27 million but had no money to pay for office expenses and salaries to its employees.  She admitted that she knew the Gigapix offerings were risky, and she told her investors they would be first in line to receive any profits after costs had been paid.  Defendant Brown admitted that she knew money was coming into the Company and not going where she thought it should.

IV.  **ELEMENTS AND PERTINENT LAW OF WIRE AND MAIL FRAUD**

    A.  **Essential Elements of Offense**

The government must prove the following four elements to prove a scheme to defraud:

1.   The defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2.   The statements were made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.   The defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

4.   The defendant used, or caused to be used, the mails or the wires in interstate or foreign commerce to carry out or to attempt to carry out an essential part of the scheme.

Ninth Circuit Model Criminal Jury Instructions, No. 8.121 and 8.124 (2010 ed.) [Mail/Wire Fraud][1] (2010 ed.); see e.g. United States v. Ciccone, 219 F.3d 1078, 1083-84 (9th Cir. 2000) (setting forth the elements of wire fraud as "(1) participat[ion] in a scheme to defraud, and (2) use [of] the wires to further the scheme."); see United States v. Omer, 395 F.3d 1087, 1089 (9th Cir. 2005) (holding in a bank fraud case where a specific statement or omission is not alleged, "[i]t is the materiality of the scheme or artifice that must be alleged; the materiality of a specific statement need not be pleaded"); Neder v. United States, 527 U.S. 1, 25 (1999) (holding materiality is an essential element of the crime of wire fraud); see also United States v. Woods, 335 F.3d 993, 999 (9th Cir. 2003) (finding the government need not prove "any particular false

---

[1] "The only difference between mail fraud and wire fraud is that the former involves the use of the mails and the latter involves the use of wire, radio, or television communication in interstate or foreign commerce.  In a wire fraud or attempted wire fraud case, the Committee recommends that Instruction[] 8.121 (Mail Fraud – Scheme to Defraud or to Obtain Money or Property by False promises)…be modified appropriately."  Ninth Circuit Model Criminal Jury Instructions, No. 8.124 (2010 ed.) [Wire Fraud] (2010 ed.).

10

statement was made.  Rather, there are alternative routes to a [wire] fraud conviction, one being proof of a scheme or artifice to defraud, which may or may not involve any specific false statements.") (internal citations omitted).  The charged wire transmissions in a wire fraud scheme need not themselves be deceptive; they need only be in furtherance of the scheme.  See, e.g., Schmuck v. United States, 489 U.S. 705, 714-15 (1989).

In presenting its case, the government is not required to prove any particular false statement was made, but instead may establish wire fraud or mail fraud by proof of a scheme or artifice to defraud. Woods, 335 F.3d at 999; United States v. Munoz, 233 F.3d 1117, 1131 (9th Cir. 2000), superseded on other grounds, (same).  A defendant may be liable for a scheme to defraud, which may or may not involve any specific false statements.  Woods, 335 F.3d at 999; see also Ninth Circuit Model Criminal Jury Instructions No. 8.121 (2010 ed.); United States v. Lyons, 472 F.3d 1055, 1068 (9th Cir. 2007), cert. denied, 550 U.S. 937 (2007) (rejecting defendant's argument that the Court should have instructed the jury that it had to agree unanimously on a particular false promise or statement because the government need not prove any particular false statement was made).

As such, the jury may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.  Woods, 335 F.3d at 998 (trial court was correct in instructing jurors to consider not only the defendant's words and statements but the context in which they were said); Ninth Circuit Model Jury Instructions, No. 8.121 (2010 ed.).

**B.   Knowledge**

An act is done "knowingly" if the defendant is aware of the act and does not act through ignorance, mistake, or accident.  United States v. Gravenmeir, 121 F.3d 526, 529 (9th Cir. 1997); Ninth Circuit Model Criminal Jury Instructions, No. 5.6 (2010 ed.).  And the government is not required to prove that the defendant knew that his or her acts were unlawful.  Id.

**C.   Scheme to Defraud**

A scheme to defraud includes any plan or course of conduct "reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Green, 745 F.2d 1205, 1207 (9th Cir. 1984); Irwin v. United States, 338 F.2d 770, 773 (9th Cir. 1964) (same).  The government is not required to prove that defendant's scheme was successful, or that he or she actually caused victims to lose money or property.  See United States v. Utz, 886 F.2d 1148, 1151 (9th Cir. 1989).

**D.   Fraudulent Intent**

Intent to defraud is an essential ingredient of any scheme to defraud.  Acting with "intent to defraud" means an intent to obtain money or property from someone by deceiving or cheating them.  Ninth Circuit Model Criminal Jury Instructions, No. 3.16 (2010 ed.); see Carpenter v. United States, 484 U.S. 19, 27 (1987).  In other words, it is knowingly acting with the intention or purpose to deceive or cheat.  Carpenter, 484 U.S. at 27.

"Intent to defraud" may be demonstrated by a defendant making or causing to be made a false or misleading statement, that in so doing the defendant acts with reckless indifference to the truth or falsity of the statement, and that the statement was made for the purpose of

inducing another to part with money or property.  See United States v. Sayakhom, 186 F.3d 928, 942 (9th Cir. 1999) ("One who acts with reckless indifference to whether a representation is true or false is chargeable with knowledge of its falsity"); United States v. Gay, 967 F.2d 322, 326 (9th Cir. 1992) (listing cases).

"Intent to defraud" may also be established by a defendant making or causing to be made a misleading statement after the transfer of money or property from the victim to the defendant, and that the statement was made to avoid returning misappropriated money or property to the victim.  United States v. Sullivan, 522 F.3d 967, 975 (9th Cir. 2008) (statement made after transfer); United States v. Jones, 472 F.3d 1136, 1140 (9th Cir. 2007) ("Although…[defendant] did not possess a fraudulent intent when he received the money, his fraudulent appropriation of the funds still satisfies the elements of § 1343").

Fraudulent intent may be, and often must be, shown by circumstantial evidence.  See United States v. Jones (Jones II), 425 F.2d 1048, 1058 (9th Cir. 1970).  Because of the difficulty in proving intent, any proof properly connected to a defendant that establishes the manner in which the fraudulent scheme was carried into execution is admissible.  United States v. Amrep Corp. (Amrep I), 545 F.2d 797, 800 (2d Cir. 1976).

A defendant need not intend to cause an actual loss to the victim to be guilty of fraud.  Carpenter v. United States, 484 U.S. 19, 26-27 (1987); United States v. Oren, 893 F.2d 1057, 1061-1062 (9th Cir. 1990).

**E.   Materiality**

The misrepresentations or omissions at issue in wire fraud or mail fraud must be material.  <u>Neder</u>, 527 U.S. at 25 ("materiality of falsehood is an element of the federal...fraud statutes").  The government must establish materiality of the false statements or omissions, <u>United States v. Halbert</u>, 640 F.2d 1000, 1007 (9th Cir. 1981), but the jury need not unanimously agree that a specific material false statement was made.  <u>United States v. Lyons</u>, 472 F.3d 1055, 1068 (9th Cir.) cert. denied, 550 U.S. 937 (2007).  Materiality is a question of fact for the jury.  <u>United States v. Carpenter</u>, 95 F.3d 773, 776 (9th Cir. 1996).  The customary common law test for materiality is whether the statement "has a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed."  <u>United States v. Peterson</u>, 538 F.3d 1064, 1072 (9th Cir. 2008).

**F.   False and Fraudulent Pretenses**

The term "false or fraudulent pretenses, representations, or promises" includes actual, direct false statements as well as half-truths, and includes the knowing concealment of facts that are material to the matter in question and that were concealed with the intent to defraud.  O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions, §47.13 (6th ed. 2012).  A statement may be false or misleading even if the words comprising the statement are literally true.  <u>See Gonzales v. Arrow Financial Services, LLC</u>, 660 F.3d 1055, 1062 (9th Cir. 2011).  A statement, although technically accurate, can be misleading because of the context in which it is used, the arrangement of the words, or the manner in which it is presented. <u>See, e.g.</u>, <u>Miller v. Thane Intern</u>, 519 F.3d 879, 886 (9th Cir. 2008).

14

### G.   Use of Wire Transmissions

The wire fraud statute requires that the wires be used for the purpose of executing any scheme or artifice to defraud.  18 U.S.C. § 1343.  The government, however, is not required to prove that the defendant actually used a wire communication to further, or to advance, or to carry out the scheme.  O'Mallery, Grenig & Lee, Federal Jury Practice and Instructions, § 47.08 (6th ed. 2012) ["Wire Fraud – Transmits by means of wire...in interstate communication"]. Each transmission by wire in interstate commerce to advance, or to further, or to carry out the scheme or plan to defraud and/or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, may be a separate violation of the wire fraud statutes.  Id. at § 47.15 (6th ed. 2012) ["Wire Fraud – Each Transmission by Wire Communication a Separate Offense"]; see also United States v. Luongo, 11 F.3d 7, 9 (1st Cir. 1993).

### H.   Use of the Mails

The mail fraud statute requires that the mails be used or caused to be used for the purpose of executing any scheme or artifice to defraud.  18 U.S.C. § 1341.  The government, however, is not required to prove that the defendant actually mailed anything or that the defendant even intended that the mails would be used to further, or to advance, or to carry out the scheme.  O'Mallery, Grenig & Lee, Federal Jury Practice and Instructions, § 47.04 (6th ed. 2012) ["Mail Fraud – Use of Mails"].  Each use of the mails to advance, or to further, or to carry out the scheme or plan may be a separate violation of the mail fraud statute." Id. at § 47.15 (6th ed. 2012) ["Mail Fraud – Use of the Mails a Separate Offense"]; see also United

15

States v. Vaughn, 797 F.2d 1485, 1493 (9th Cir. 1986) ("Each mailing in furtherance of the scheme constitutes a separate violation.").

### I.   Possible Defenses and/or Obfuscation

#### 1.   Victim Negligence Not a Defense

A victim's negligence, carelessness, or even foolishness is not a defense to a charge of fraud.  The laws against fraud are designed to protect the naïve and careless as well as the experience and careful.  United States v. Hanley, 190 F.3d 1017, 1023 (9th Cir. 1999) (citing Lemon v. United States, 278 F.2d 369, 373 (9th Cir. 1960), for the rule that a victim's naivete is no defense to mail or wire fraud charges).  In fact, the lack of guile on the part of those solicited may itself point with persuasion to the fraudulent nature of the scheme.  See Lemon v. United States, 278 F.2d at 373); United States v. Brien, 617 F.2d 299, 311 (1st Cir. 1980).

#### 2.   Good Faith Belief

A belief that a victim will be repaid and will sustain no loss, even if that belief is held in good faith, is not a defense to a charge of wire fraud.  United States v. Oren, 893 F.2d 1057, 1062 (9th Cir. 1990) (belief that property was worth price paid by victims of fraud scheme not a defense to federal fraud charge); United States v. Benny, 786 F.2d 1410, 1417 (9th Cir. 1986) ("a good faith belief that the victim will be repaid and will sustain no loss is no defense at all" to mail fraud charges).

## V.   ELEMENTS AND PERTINENT LAW OF OFFERING AND SELLING UNREGISTERED SECURITIES

### A.   Essential Elements of Offense

The government must prove the following four elements to prove the offering and selling of unregistered securities:

16

1. The defendant directly or indirectly offered or sold securities that were not registered with the Securities and Exchange Commission;

2. The securities sold were required to be registered with the Securities and Exchange Commission; that is that the transactions were not exempt from registration;

3. The mails or the means and instruments of transportation or communication in interstate commerce were used in connection with the offer and sale of the securities; and

4. The defendant acted willfully.

Bender & Co., Modern Federal Jury Instructions – Criminal § 57-3, Elements of the Offense.

Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e(a)(1), makes it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration. The registration requirement was designed to be a tool for protecting financially unsophisticated investors from rampant fraud in the market. See SEC v. Platform Wireless Int'l Corp., 617 F.3d 1072, 1085 (9th Cir. 2010) (citing Securities Act of 1933, Pub. L. No. 73-22, pmbl., 48 Stat. 74, 74 (1933)). When a company and its employees fail entirely to register its securities and nonetheless proceed to sell them generally to the public, the entire system of mandatory public disclosure is evaded to public detriment. Id.

**B. Willful**

In order to prove willfulness, the government does not need to prove that the defendant knew his or her conduct was unlawful. See Ninth Circuit Model Criminal Jury Instructions, No. 5.6 (2010 ed.). "Willfully" means intentionally undertaking an act, making an untrue statement or failing to disclose for the wrongful purpose of defrauding or deceiving someone. Id. The Ninth Circuit, in the

1   case of <u>United States v. Tarallo</u>, 380 F.3d 1174 (9th Cir. 2004),

2   rejected the claim that the term "willfully" for securities

3   violations requires knowledge that one's actions are unlawful:

4         Under our jurisprudence, then, "willfully" as it is used in
           §78ff(a) means intentionally undertaking an act that one

5         knows to be wrongful; "willfully" in this context does <u>not</u>
           require that the actor know specifically that the conduct

6         was unlawful.

7   <u>Id.</u> at 1188.

8       While it is true that <u>Tarallo</u> dealt with violations of

9   securities fraud, as opposed to the offer and sale of unregistered

10   securities, the Ninth Circuit has affirmed the holding of <u>Tarallo</u> in

11   "regulatory-type" securities cases.  <u>See, e.g.</u> <u>United States v.</u>

12   <u>Reyes</u>, 577 F.3d 1069 (9th Cir. 2009) (instructing the jury that the

13   government had to prove that the defendant acted "knowing the

14   falsification [of financial records] to be wrongful" as opposed to

15   "with the purpose of violating a known legal duty").

16   **VI.   EVIDENTIARY ISSUES**

17       At trial, the government intends to introduce into evidence,

18   among other things, testimony from percipient witnesses, summary

19   witnesses, an FBI forensic accountant, a securities law expert,

20   individual victim investors, as well as documents and potential

21   stipulations.

22       **A.   Expert Testimony or Testimony Based on Specialized**
               **Knowledge**

23

24       The government intends to offer opinion testimony through

25   Professor William Hicks concerning how the general solicitation of

26   investors that took place in this case violated the rules for a

27   private offering.  Professor Hicks also will testify generally to

28   what a security is, what a private offering is, and what accredited

and unaccredited investors are.  If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed. R. Evid. 702.  The court has broad discretion to determine whether to admit expert testimony.  See, e.g., United States v. Hankey, 203 F.3d 1160, 1168-73 (9th Cir. 2000) (expert testimony properly admitted); United States v. Cuevas, 847 F.2d 1417, 1428 (9th Cir. 1988); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir. 1987); United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985); United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982).  An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703.  The opinion of an expert may be given even if it embraces an ultimate issue to be decided by the trier of fact.  Fed. R. Evid. 704; Fleishman, 684 F.2d at 1335.

## B.   Charts and Summaries

Certain portions of the present case involve a large number of documents, in particular, financial records of Gigapix, OZ3D, and other related entities.  To assist in the jury's understanding of the case, the government intends to present charts and summaries of those materials, to save time at trial and to avoid the need to present the voluminous records themselves.

Fed. R. Evid. 1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place.  The court may order that they be produced in court.

1    In this case, all of the underlying records have been copied and

2    produced to defendants in discovery.

3        1.   Summary Charts

4        A chart or summary may be admitted as evidence where the

5    underlying documents are voluminous, admissible, and available for

6    inspection.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th

7    Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th

8    Cir. 1979).  While the underlying documents must be admissible, they

9    need not be admitted.  See Meyers, 847 F.2d at 1412; Johnson, 594

10   F.2d at 1257 n.6.  Summary charts need not contain the defendant's

11   version of the evidence and may be given to the jury while a

12   government witness testifies concerning them.  See United States v.

13   Radseck, 718 F.2d 233, 239 (7th Cir. 1983); Barsky v. United States,

14   339 F.2d 180, 181 (9th Cir. 1964).

15       Summary exhibits, such as those the government wishes to

16   introduce into evidence, are admissible under Fed. R. Evid. 611(a)

17   and have long been recognized as an appropriate means of clarifying a

18   complicated or document-intensive case for the jury.  See United

19   States v. Silverman, 449 F.2d 1341, 1346 (2d Cir. 1971).  Fed. R.

20   Evid. 611(a) permits a court to "exercise reasonable control over the

21   mode and order of interrogating witnesses and presenting evidence so

22   as to (1) make the interrogation and presentation effective for

23   ascertainment of the truth, (2) avoid needless consumption of time,

24   and (3) protect witnesses from harassment or undue embarrassment."

25   United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987);

26   United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

27       Hence, under Federal Rules of Evidence 1006 and 611(a), courts

28   routinely admit into evidence summary charts that organize other

20

1   evidence and aid the jury's understanding, as long as the underlying
2   evidence is admissible, has been made available to the adverse party,
3   and a witness with knowledge of the preparation of the chart or
4   summary is available for cross-examination.  See United States v.
5   Gardner, 611 F.2d 770, 776 (9th Cir. 1980); Tamarin v. Adam Caterers,
6   Inc., 13 F.3d 51, 53 (2d Cir. 1993); United States v. Caswell, 825
7   F.2d 1228, 1235-36 (8th Cir. 1989).

8        The summary exhibits the government intends to present satisfy
9   all of the foregoing requirements.  The pertinent evidence, involving
10  financial transactions and related evidence, is admissible.  The
11  summarized evidence has been provided to the defense.  The summary
12  witnesses will be available for cross-examination.  Moreover, the
13  summary exhibits will serve to organize and clarify the government's
14  presentation and assist the jury's understanding of the case.  The
15  use and admission of summary exhibits at trial is thus appropriate.
16  Fed. R. Evid. 611(a); Gardner, 611 F.2d at 776.

17       Summary charts also may be used by the government in opening
18  statement.  Indeed, "such charts are often employed in complex
19  conspiracy cases to provide the jury with an outline of what the
20  government will attempt to prove."  United States v. De Peri, 778
21  F.2d 963, 979 (3d Cir. 1985) (approving government's use of chart);
22  United States v. Rubino, 431 F.2d 284, 290 (6th Cir. 1970) (same).

23            2.   Summary Witnesses

24       A summary witness may properly testify about, and use a chart to
25  summarize, evidence that has already been admitted.  The court and
26  jury are entitled to have a witness "organize and evaluate evidence
27  which is factually complex and fragmentally revealed."  United States
28  v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (DEA agent's

1    testimony regarding her review of various telephone records, rental

2    receipts, and other previously offered testimony held to be proper

3    summary evidence, as it helped jury organize and evaluate evidence;

4    summary charts properly admitted); United States v. Lemire, 720 F.2d

5    1327, 1348 (D.C. Cir. 1983).

6         A summary witness may rely on the analysis of others where the

7    summary witness has sufficient experience to judge another person's

8    work and incorporate as his or her own the fact of its expertise.

9    The use of other persons in the preparation of summary evidence goes

10   to its weight, not its admissibility.  See United States v. Soulard,

11   730 F.2d 1292, 1299 (9th Cir. 1984); Diamond Shamrock Corp. v.

12   Lumbermens Mutual Casualty Co., 466 F.2d 722, 727 (7th Cir. 1972)

13   ("It is not necessary . . . that every person who assisted in the

14   preparation of the original records or the summaries be brought to

15   the witness stand.").

16        C.   **Authentication and Foundation**

17             1.   Fed. R. Evid. 901

18        Federal Rule of Evidence 901(a) provides that "[t]he requirement

19   of authentication or identification as a condition precedent to

20   admissibility is satisfied by evidence sufficient to support a

21   finding that the matter in question is what its proponent claims."

22   Fed. R. Evid. 901(a).  Under Rule 901(a), evidence should be

23   admitted, despite any challenge, once the government makes a prima

24   facie showing of authenticity or identification so "that a reasonable

25   juror could find in favor of authenticity or identification . . .

26   [because] the probative force of the evidence offered is, ultimately,

27   an issue for the jury."  United States v. Chu Kong Yin, 935 F.2d 990,

28   996 (9th Cir. 1991) (citations and internal quotation marks omitted);

1    see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

2    Once the government meets this burden, "[t]he credibility or

3    probative force of the evidence offered is, ultimately, an issue for

4    the jury." Black, 767 F.2d at 1342.

5         To be admitted into evidence a physical exhibit must be in

6    substantially the same condition as when the crime was committed.

7    This determination is to be made by the trial judge and will not be

8    overturned except for clear abuse of discretion.  Factors the court

9    may consider in making this determination include the nature of the

10   item, the circumstances surrounding its preservation, and the

11   likelihood of intermeddlers having tampered with it.  See Gallego v.

12   United States, 276 F.2d 914, 917 (9th Cir. 1960).

13        The government need not establish all links in the chain of

14   custody of an item or call all persons who were in a position to come

15   into contact with it.  See Gallego, 276 F.2d at 917.  Alleged gaps in

16   the chain of custody go to the weight of the evidence rather than to

17   its admissibility.  See United States v. Taylor, 716 F.2d 701, 711

18   (9th Cir. 1983).  A duplicate is admissible to the same extent as the

19   original, unless there is a genuine question as to the authenticity

20   of the original or it would be unfair under the circumstances to

21   admit the duplicate in lieu of the original.  See Fed. R. Evid. 1003;

22   United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

23             2.   Audio and Video Recordings

24        The government intends to introduce audio recordings captured

25   during the investigation in this case, namely, of defendant Blauvelt

26   interviewing with FBI agents in this case.  Recordings are admissible

27   upon a showing that "the recording is accurate, authentic and

28

generally trustworthy." <u>United States v. King</u>, 587 F.2d 956, 961 (9th Cir. 1978).

For example, testimony that an audio recording depicts events that the witness observed is sufficient to authenticate the recording.  Fed. R. Evid. Rule 901(b) (a party may authenticate evidence through "[t]estimony [of a witness with knowledge] that a matter is what it is claimed to be"); <u>United States v. Smith</u>, 591 F.3d 974, 979-80 (8th Cir. 2010) (applying Rule 901(b), holding that trial testimony of forensic examiner identifying a DVD as a recording of her forensic interview of child and indicating that the DVD was an accurate recording of the interview was sufficient to authenticate the DVD).

Recordings also may be authenticated by persons not party to the recording, as long as the person provides testimony satisfying the <u>prima facie</u> showing required under Rule 901.  <u>See</u> <u>United States v. Sivils</u>, 960 F.2d 587, 597 (6th Cir. 1992) (audio tapes authenticated by testimony regarding routine checks of the recording equipment by federal agents and chain of custody of tapes once recorded).

### 3.   Written and Electronic Communications

The government intends to admit into evidence letters and emails, specifically letters and emails concerning communications between witnesses, defendants, victim investors, and/or others.  As with other types of communication, the admissibility of letters and emails is governed by a collection of evidentiary rules.  <u>Lorraine v. Markel Am. Ins. Co.</u>, 241 F.R.D. 534, 538 (D. Md. 2007) (listing rules).  Each letter or email must be relevant and authentic.  Fed. R. Evid. 401 and 901(a).  If a letter or email is hearsay, then it

must be covered by an applicable exception.  See Fed. R. Evid. 801, 803, 804, and 807.

In particular, the government may seek to introduce letters and emails under the past recollection recorded exception to the hearsay rule.  Fed. R. Evid. 803(5).  Under this rule, an email may be admitted if it fulfills three criteria: (1) it is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (2) it was made or adopted by the witness when the matter was fresh in the witness's memory; and (3) it accurately reflects the witness's knowledge.  Id.  If admitted under this hearsay exception, the letters and emails may be read into evidence but may be received as an exhibit only if offered by an adverse party.  Id.  Letters and emails also may be used as a writing to refresh a witness's memory or recollection.  See Fed. R. Evid. 612. Letters and emails also may be offered as a duplicate of the original.  See Fed. R. Evid. 1003.

To authenticate a letter or email message, the proponent must produce "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a); see also Lorraine, 241 F.R.D. at 538 ("can the proponent show that the [email] is what it purports to be").  This can be accomplished by testimony of a witness with knowledge, and/or by distinctive characteristics in the letter or email.  Fed. R. Evid. 901(b)(1) and 901(b)(4); see United States v. Siddiqui, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (authentication of email by testimony that message bore defendant's email address; described defendant's conduct in intimate detail; referred to author using defendant's nickname; and

1   was followed by telephone call from defendant regarding content of

2   email).

3          4.   Business Records

4              a.   Foundational Requirements

5       The government may admit business records (i.e., records of

6   regularly kept activities), such as bank records reflecting

7   defendants' financial transactions.  For business records to be

8   admissible, the following foundational facts must be established

9   through the custodian of the records or another qualified witness:

10  (1) the records must have been made at or near the time by, or from

11  information transmitted by, a person with knowledge; and (2) the

12  records must have been made and kept in the course of a regularly

13  conducted business activity. Fed. R. Evid. 803(6); United States v.

14  Bland, 961 F.2d 123, 126-28 (9th Cir. 1992).  In determining whether

15  these foundational facts are established, the court may consider

16  hearsay and other evidence not admissible at trial.  See Federal

17  Rules of Evidence 104(a) & 1101(d)(1); Bourjaily v. United States,

18  483 U.S. 171, 178-79 (1987).

19      Challenges to the accuracy or completeness of business records

20  ordinarily go to the weight of the evidence and not its

21  admissibility.  See, e.g., La Porta v. United States, 300 F.2d 878,

22  880 (9th Cir. 1962).

23              b.   Authentication by Declaration

24      Certified domestic records of regularly conducted activity are

25  self-authenticating when accompanied by a written declaration

26  establishing that (1) the records must have been made at or near the

27  time by, or from information transmitted by, a person with knowledge;

28

26

and (2) the records must have been made and kept in the course of a regularly conducted business activity.  Fed. R. Evid. 902(11).

Custodian of records declarations may be utilized by the court to provide a foundation for the admission in evidence of business records without creating any confrontation issue under Crawford v. Washington, 541 U.S. 36 (2004).  See United States v. Hagege, 437 F.3d 943,957 (9th Cir. 2006); United States v. Cervantes-Flores, 421 F.3d 825, 832-32 (9th Cir. 2005).

### 5.   Certified Public Records

The government will seek to introduce certain public records in the form of domestic public documents under seal, or certified copies of public records, which do not require extrinsic evidence of authenticity as a condition precedent to admissibility.  Fed. R. Evid. 902(1) and 902(4).  These records include, but may not be limited to, cease and desist orders against Gigapix, OZ3D, and defendants Blauvelt and Pusateri from various states.  Such records are self-authenticating, Fed. R. Evid. 902(4), and not hearsay, Fed. R. Evid. 803(8).

### 6.   Duplicates

A duplicate is admissible to the same extent as an original unless (1) there is a genuine question as to the authenticity of the original or, (2) in the circumstances, use of the duplicate would be unfair.  Fed. R. Evid. 1003.  Even a photocopy bearing extraneous handwriting not connected to the defendant is admissible.  United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir. 1990).

**D.   Victim Testimony**

Various individual fraud victim investors will testify in this case.  The fraud victim investors will testify about conversations

27

1  they had with the defendants in this case and the misrepresentations
2  made to them, which caused them to invest in Gigapix and OZ3D.

3  **E.   Defendant's Statements**

4      The government intends to offer prior statements made by
5  defendants to law enforcement officials during various interviews.
6  Under the Federal Rules of Evidence, defendants' statements are
7  admissible as a party admission if offered against him or her.  Fed.
8  R. Evid. 801(d)(2)(A); see also United States v. Warren, 25 F.3d 890,
9  895 (9th Cir. 1994); Territory of Guam v. Ojeda, 758 F.2d 403, 408
10 (9th Cir. 1985) (explaining that a statement need not be
11 incriminating to be an admission).  The government will not offer a
12 defendant's statement implicating another non-testifying co-defendant
13 in its case-in-chief.  See Bruton v. United States, 391 U.S. 123
14 (1968).  The government, however, may introduce a defendant's
15 statements against non-testifying defendants if the defendant
16 testifies.  See Nelson v. O'Neil, 402 U.S. 622 (1971).  The
17 government also may introduce in its case-in-chief a statement from a
18 defendant that does not directly or clearly implicate the other co-
19 defendants in the charged conduct because it does not create a
20 Confrontation Clause violation.  See United States v. Hackett, 638
21 F.2d 1179, 1186 (9th Cir. 1980).

22     Defendants Blauvelt, Pritchard, and Brown knowingly and
23 voluntarily spoke to law enforcement authorities after being advised
24 of their rights.  See United States v. Andaverde, 64 F.3d 1305, 1314
25 (9th Cir. 1995) ("[T]he fact that [defendant] later in the interview
26 expressly invoked his right to silence demonstrates that he was
27 conscious of his right to remain silent…").  Furthermore, a statement
28 is not hearsay if the statement is offered against a party and is the

28

1   party's own statement in either an individual or representative
2   capacity.  Fed. R. Evid. 801(d)(2)(A); United States v. Burreson, 643
3   F.2d 1344, 1349 (9th Cir. 1981).  Additionally, statements that are
4   adopted by a party opponent are non-hearsay.  Fed. R. Evid.
5   801(d)(2)(B).

6       However, a defendant may not elicit his own prior statements
7   from a witness, because they are hearsay when offered by him.  Fed.
8   R. Evid. 801(d)(2); United States v. Ortega, 203 F.3d 675, 682 (9th
9   Cir. 2000); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir.
10  1985) (defendant's exculpatory statements inadmissible when offered
11  by defense).  By eliciting some of defendants' prior statements, the
12  government does not thereby open the door to the defendants to put in
13  other out-of-court statements.

14      The only potential limitation on this principle is the "doctrine
15  of completeness," Fed. R. Evid. 106, which has been applied by some
16  courts to require that all of a particular prior statement by
17  defendant be admitted where necessary to explain the admitted portion
18  of the statement, to place it in context, or to avoid misleading the
19  jury.  United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  "The
20  completeness doctrine does not, however, require introduction of
21  portions of a statement that are neither explanatory of nor relevant
22  to the admitted passages."  Marin, 669 F.2d at 84.  The "doctrine of
23  completeness," also does not apply to conversations that are not
24  written or recorded.  See United States v. Collicott, 92 F.3d 973, 983
25  (9th Cir. 1996).

26      In addition, any duly admitted recording must be played in open
27  court.  Allowing jurors to take into the jury deliberation room
28  recordings that were not played in open court is structural error

1  requiring automatic reversal if a defendant objects to allowing the

2  jurors to have the unplayed recordings in the jury room.  <u>United</u>

3  <u>States v. Noushfar</u>, 78 F.3d 1442, 1445-46 (9th Cir. 1996).

4      **F.   Transcripts of Recorded Conversations**

5      The recorded statements that the government will seek to

6  introduce in its case-in-chief at trial were in English.  The

7  government has prepared written transcripts of these recordings as an

8  aid to the jury.  <u>See</u> <u>United States v. Turner</u>, 528 F.2d 143, 167 (9th

9  Cir. 1975) (cautionary instruction given that only the recordings

10 were evidence of the conversation).  Copies of the government's

11 transcripts have been provided to the defense and are available,

12 should the court desire them in advance of trial.  These transcripts

13 will be available to the jury simultaneous to the playing of the

14 video, but the transcript will not be admitted in evidence.  The

15 recordings themselves would be treated as the exhibits, and the

16 transcripts would not be sent to the jury room.

17     **G.   Rule 404(b) Evidence**

18     The government intends to introduce Rule 404(b) evidence

19 concerning the defendants' past history and practices of soliciting

20 money from investors for the production of movies.  Although Rule

21 404(a) prohibits the use of character evidence to prove that

22 defendants acted in accordance with a particular character trait on a

23 particular occasion, the evidence may be admissible for other

24 purposes under Rule 404(b), such as proof of motive, opportunity,

25 intent, preparation, plan, knowledge, identity, or absence of mistake

26 or accident.  Fed. R. Evid. 404(b).  The Ninth Circuit has explained

27 that Rule 404(b) is "an inclusionary rule," which admits evidence of

28 other acts unless it tends only to prove criminal disposition.

United States v. Curtin, 489 F.3d 935, 944-45 (9th Cir. 2007) (en banc); United States v. Catabran, 836 F.2d 453, 459 (9th Cir. 1988). "The intent behind the rule is not to flatly prohibit the introduction of such evidence but to limit the purpose for which it is introduced." Boyd v. San Francisco, 576 F.3d 938, 947 (9th Cir. 2009). As the en banc court in Curtin noted, "once it has been established that the evidence offered serves one of the purposes [set forth in the Rule], the relevant Advisory Committee notes make it clear that the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403."

## H.   Cross-Examination

The scope of a cross-examination is within the discretion of the trial court. Fed R. Evid. 611(b). It should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The trial court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination. Fed. R. Evid. 611(b).

The defendants in this case may testify on their own behalf. A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he or she puts in dispute during cross-examination. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). A defendant has no right to avoid cross-examination on matters which call into question his or her claim of innocence. Id. Moreover, a defendant who testifies at trial waives his or her Fifth Amendment privilege and may be cross-examined on matters made relevant by his or her direct testimony. United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

The scope of defendant's waiver is coextensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); Black, 767 F.2d 1334, 1341 (9th Cir. 1985).  The extent of the waiver is determined by whether the question reasonably relates to subjects covered by defendants' direct testimony.  United States v. Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).  Federal Rule of Evidence 608(b) provides that:

> [E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

The defendants' credibility will be crucial if they choose to testify.  Accordingly, cross-examination of the defendants about other fraudulent conduct in which they may have engaged is necessary for the jury to weigh whether their denial of knowledge and intent to defraud is credible given any other actions.  As the Ninth Circuit has held, Rule 608(b) "specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility.  Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness."  United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).  Additionally, Fed. R. Evid. 404(b) does not proscribe the use of other act evidence as an impeachment tool during cross-examination.  Id.

I.   **Character Evidence**

Defendants may intend to call character witnesses to testify on their behalf.  The Supreme Court has recognized that character evidence – particularly cumulative character evidence – has weak

1   probative value and great potential to confuse the issues and

2   prejudice the jury.  See Michelson v. United States, 335 U.S. 469,

3   480, 486 (1948).  The Court has thus given trial courts wide

4   discretion to limit the presentation of character evidence.  Id.

5       In addition, the form of the proffered evidence must be proper.

6   Federal Rule of Evidence 405(a) sets forth the sole methods for which

7   character evidence may be introduced.  It specifically states that

8   where evidence of a character trait is admissible, proof may be made

9   in two ways: (1) by testimony as to reputation and (2) by testimony

10  as to opinion.  Character witnesses called by the defendants may not

11  testify about specific acts demonstrating a particular trait or other

12  information acquired only by personal observation and interaction

13  with the defendants; the witness must be limited to summarizing the

14  reputation of the defendants as known in the community.  See

15  Michelson, 335 U.S. at 477.  Thus, defendant may not introduce

16  specific instances of his or her good conduct through the testimony

17  of others.  Id. ("The witness may not testify about defendant's

18  specific acts or courses of conduct or his possession of a particular

19  disposition or of benign mental or moral traits.").

20      On cross-examination of a defendant's character witness,

21  however, the government may inquire into specific instances of a

22  defendant's past conduct relevant to the character trait at issue.

23  See Fed. R. Evid. 405(a).  In particular, a defendant's character

24  witnesses may be cross-examined about their knowledge of the

25  defendant's past crimes, wrongful acts, and arrests.  See Michelson,

26  335 U.S. at 482-83.  The only prerequisite is that there must be a

27  good faith basis that the incidents inquired about are relevant to

28

1  the character trait at issue.  See <u>United States v. McCollom</u>, 664

2  F.2d 56, 58 (5th Cir. 1981).

3      **J.   Reciprocal Discovery**

4      Rule 16 of the Federal Rules of Criminal Procedure creates

5  certain reciprocal discovery obligations on the part of defendants to

6  produce three categories of materials that he or she intends to

7  introduce as evidence at trial: (1) documents and tangible objects;

8  (2) reports of any examinations or tests; and (3) expert witness

9  disclosure.  Rule 16 imposes on defendants a continuing duty to

10  disclose these categories of materials.  Fed. R. Crim. P.

11  16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a

12  party fails to produce discovery as required by Rule 16, the rule

13  empowers the district court to "prohibit the party from introducing

14  evidence not disclosed, or it may enter such other order as it deems

15  just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

16      The Ninth Circuit has held that where a defendant fails to

17  produce reciprocal discovery or fails to provide timely notice of his

18  or her intention to call an expert witness, it is well within the

19  district court's discretion to exclude such defense evidence,

20  especially where the defense disclosure was made after the start of

21  trial.  See <u>United States v. Scholl</u>, 166 F.3d 964, 972 (9th Cir.

22  1999) (upholding district court's decision to exclude defense

23  evidence due to defendant's strategic decision to withhold discovery

24  until the last minute); <u>United States v. Aceves-Rosales</u>, 832 F.2d

25  1155, 1156-57 (9th Cir. 1987) (holding that district court did not

26  abuse its discretion in precluding medical report that the defense

27  wished to introduce in case-in-chief but which it disclosed for the

28  first time after the government had rested); <u>United States v. Moore</u>,

34

208 F.3d 577, 578 (7th Cir. 2000) ("courts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases").

As of the filing of this brief, the government has not received reciprocal discovery from the defendants despite multiple requests for such discovery.

**VII. Conclusion**

The government requests leave to file such additional memoranda as may become appropriate during the course of the trial.


Dated: October 7, 2014                    Respectfully submitted,

                                          STEPHANIE YONEKURA
                                          Acting United States Attorney

                                          ROBERT E. DUGDALE
                                          Assistant United States Attorney
                                          Chief, Criminal Division


                                              /s/ Byron J. McLain
                                          ELLYN MARCUS LINDSAY
                                          BYRON J. MCLAIN
                                          Assistant United States Attorney

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA