Announcement and Agreement of $60 Million Deal Dated November 25, 2008

# EXHIBIT 423



# GigaPix Studios & Polychrome Pictures/Gold River Entertainment to Launch $60 Million Kid Slate

Tue Nov 25, 2008 2:15pm EST
GigaPix Studios & Polychrome Pictures/Gold River Entertainment to Launch $60 Million Kid Slate

Media 8 to Handle Foreign Distribution

LOS ANGELES, Nov. 25 /PRNewswire/ -- GigaPix Studios, the independent production studio led by executive David Pritchard (HBO, "The Simpsons", "King of the Hill", "Family Guy", "Captain Abu Raed"), and Polychrome Pictures/Gold River Entertainment run by Geno Taylor and Danny Rodriguez ("Innocent Voices", "The Disembodied"), announced today that they have inked a venture for financing, P&A and worldwide theatrical distribution of a "kid friendly" slate of five feature films.

GigaPix Studios has arranged for production financing of approximately $6mm - $10mm per picture, and Polychrome Pictures/Gold River Entertainment, is providing access to a revolving line of credit of up to $25mm per picture of P&A. The combined deal provides approximately $60mm - $80mm of production and distribution capital to the venture. Industry leader Manatt-Phelps & Phillips' Jordan Yospe is on board to source, negotiate and execute product branding and integration into the broadly appealing kid film.

Distribution outside the US will be handled by Media 8 Entertainment, who will handle all foreign sales beginning at this year's American Film Market, extending through the life of the stream of the product which is expected to produce five feature films over the next three years.

"In a world that grows increasingly complicated, we're setting a course to create content that provides families' comfort and enjoyment that will endure for a lifetime. It's a great challenge and a tremendous opportunity to craft good stories that are well told to an appreciative worldwide audience in this partnership," says Kip Konwiser, GigaPix's head of production.

The P&A spend, intended to support an initial launch campaign of not less than 750 screens, will grow to as many as 3000 screens as these key market cities expand and perform.

Commenting on the GigaPix partnership, Media 8 President Stewart Hall stated, "GigaPix is an amazing company that thoroughly understands the family market on a global level. We are delighted to join them in their commitment to bring high-quality, family friendly fare to audiences around the world."

GigaPix Studios' David Pritchard and Jimmy Cummings alongside Gold River's Tony Chopelas will executive produce, with the pictures produced by GigaPix's in-house producer/executive Kip Konwiser and Polychrome's Geno Taylor and Danny Rodriguez.

Polychrome co-founder Geno Taylor commented, "What a pleasure it is to be working with an exceptional group of creatives like GigaPix and Media 8. Collectively, we are a team of seasoned professionals with the same intense work-ethic and passion to create something powerful for all ages."

Polychrome co-founder Danny Rodriguez offered, "We have been planning to venture into this arena for quite some time but were waiting for all of the pieces to fall into place. It is safe to say, with this alignment and strategy; all the elements are in place. We couldn't be more excited."

The company's intend to announce the first project after the first of the year but have a number of potentials in their sights.

**About GigaPix Studios:**

GigaPix Studios and prexy David Pritchard produced the 2008 award-winning Jordanian feature film "Captain Abu Raed" which won the Dramatic World Cinema Audience Award at the 2008 Sundance Film Festival. The film is the country's official selection competing for a Best Foreign Language Film Academy Award and is also competing for Best Actor and other major categories. GigaPix Studios is represented by Christopher J. Corabi, Attorney at Law P.C For more information on GigaPix Studios visit: www.gigapixstudios.com.

Producer Kip Konwiser and writer/director Kern Konwiser are a well-recognized sibling team. For over 20 years, the brothers have produced, written and directed numerous award winning theatrical films, documentaries, cable and network movies and series, and other entertainment media with a variety of industry and independent financing partners. In addition to being executives with Mandalay Entertainment for years, as well as with Quincy Jones and sports agent David Falk at New Urban Entertainment, the brothers have awards and credits which include HBO's highly decorated film "Miss Evers' Boys"; documentaries "On Hallowed Ground", "White Space", "Crossover", and feature films including "Smile", "Animal", "Focus", "Dallas 362" as well as music collaborations with Herbie Hancock, Willie Nelson, the Bob Marley Estate and The Grateful Dead's Mickey Hart. For more information on Konwiser Brothers visit: www.konwiserbros.com.

## About Polychrome Pictures:

Polychrome Pictures is a multi-faceted home entertainment producer and distributor with an eclectic line up of quality titles in the genres of drama, comedy, horror, urban, music and special interest. With a prolific release schedule of 10-12 features yearly, Polychrome content is exclusively distributed in the U.S. and Canada by Vivendi Entertainment.

Launched in June 2005, Polychrome consistently finds and utilizes the brightest creative minds around the globe in an effort to preserve the soul of independent filmmaking and expose the masses to creative flavor often overlooked by the Hollywood machine. The collective entertainment experience at Polychrome Pictures spans several decades, which has enabled the company to learn from the past, while impacting the future of the overall entertainment experience.

For more information about Polychrome Pictures, visit:
http://www.polychromepictures.com

## About Media 8 Entertainment:

Media 8 Entertainment is a leading film entertainment company engaged in the production, financing, acquisition, and worldwide licensing of theatrical feature films in a variety of genres. Media 8 produced and distributed the Academy Award-winning MONSTER, the critically acclaimed THE UPSIDE OF ANGER starring Joan Allen and Kevin Costner, and the action-drama RUNNING SCARED written and directed by Wayne Kramer and starring Paul Walker.

Media 8 Entertainment's current slate of films includes DALI, starring Antonio Banderas and directed by Simon West; the hit UK comedy A FILM WITH ME IN IT; the romantic comedy EVERYBODY WANTS TO BE ITALIAN; THE RAMEN GIRL, starring Brittany Murphy and Toshiyuki Nishida; the critically acclaimed film AMERICAN SON which stars Nick Cannon, Tom Sizemore and Melonie Diaz; the historical drama EICHMANN starring Thomas Kretschmann, Troy Garity, and Franka Potente; and the emotional drama LOCAL COLOR starring Armin Mueller-Stahl, Ray Liotta and Trevor Morgan.

## JOINT VENTURE AGREEMENT

This Joint Venture Agreement (this "Agreement") is made and entered into as of September 12, 2008 by and between Gold River Entertainment, LLC ("GRE") and Polychrome Pictures ("PC"), on the one hand, and Gigapix Studios, Inc. ("GPX") on the other hand, with respect to that certain property currently known as "CUL DE SAC" (aka UNSUPERVISED), written by Brad Kaaya and Jeff Franklin (the "Work"). The Work, and any and all pitches, treatments and/or screenplays based on the Work, together with and including all titles, themes, stories, sketches, artwork and all other contents thereof, and the characters therein, and all translations thereof, and any other material of any kind pertaining to or relating to the foregoing, whether now owned or hereinafter acquired or created by GPX are collectively referred to herein as the "Property". GRE, GPX and PC are hereinafter referred to, at times collectively, as the "Parties" and individually as a "Party".

## RECITALS

**WHEREAS**, GRE is in the business of financing P&A campaigns for theatrical distribution of feature length motion pictures through PC;

**WHEREAS**, GPX owns the rights to the Property and is in the business of producing and financing feature length motion pictures for theatrical distribution;

**WHEREAS**, GPX wishes to provide production financing in the amount of six million ($6M) dollars for a motion picture based on the Property (the "Picture");

**WHEREAS**, GRE wishes to provide a minimum of six million ($6M) dollars for the P&A funding for the domestic theatrical campaign to be utilized by Polychrome Pictures for the exploitation of the Picture (the "P&A Commitment");

**WHEREAS**, GRE and GPX both wish to provide services in connection with the production of the Picture according to the terms and conditions set forth in this Agreement;

**NOW THEREFORE**, in consideration of the mutual covenants and obligations set forth herein and other good and valuable consideration given, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>Conditions Precedent</u>. Neither party shall have any obligations under this Agreement unless each Party has received a fully executed copy of this Agreement. Additionally, The Parties shall be released from their respective rights and obligations hereunder and this Agreement shall be voidable at the election of either Party in the event the following benchmarks are not attained:

   (a) Financing and completion bond, if applicable, are in place for the Picture's production budget of no less than $6 million as of November 30, 2008 or sooner.

   (b) P&A financing is complete and earmarked for expenditure pursuant to the terms hereof as of November 30, 2008 or sooner, and GRE and PC are able to provide financial assurances as to the same, in a manner reasonably required by GPX or its co-financing partners & third party lenders.

(c) In the event that the financing, completion bond and P&A financing is not in place in accordance with and by no later than the dates set forth in (a) and (b) above, this Agreement shall terminate, unless the parties otherwise mutually agree to extend the term in writing.

2. <u>Assignment of Rights</u>. Upon satisfaction of the conditions precedent in paragraph one (1) above as well as the benchmarks set forth in (a) and (b) above, GRE and PC shall be collectively assigned and granted by GPX in perpetuity (subject to divesture in the event that GRE and PC fail to meet the P&A Commitment) and throughout the universe in and to the Property and the Picture equal to thirty-five percent (35%) of 100% (which shall be divided 25% to GRE and 10% to PC) defined, accounted for, paid and in all other manners on a favored nations basis with GPX's interest in and to the Picture including all right, title and interest therein and thereto, whether now owned or hereinafter acquired, including without limitation all copyrights, neighboring rights, trademarks and any and all other exploitation rights in the Property and Picture now or hereafter recognized in any and all territories and jurisdictions including by way of illustration, production, reproduction, distribution, adaptation, performance, fixation, rental and lending rights, exhibition, broadcast and all other rights of communication to the public, and the right to exploit the Property and Picture throughout the universe in perpetuity in all media, markets and languages and in any manner now known or hereafter devised (the "Rights"). Without limiting the generality of the foregoing, the Rights in the Property and Picture herein granted include:

(a) all music and music publishing rights that are owned and/or controlled by GPX, soundtrack album and other soundtrack exploitation rights, merchandising rights (including without limitation the exploitation and/or licensing of characters and other elements of the Property for all types of goods, services and theme park and other types of attractions) publishing rights, radio rights, stage rights to the extent retained by GPX and promotional and advertising rights.

(b) Copyrights/Exploitation Rights. With respect to works produced pursuant to the rights granted in subparagraph (a) above, a joint ownership of all copyrights, neighboring rights, trademarks and any and all other exploitation rights in the Property now or hereafter recognized in any and all territories and jurisdictions (including by way of illustration only, reproduction, distribution, adaptation, performance, fixation, rental and lending rights, exhibition, broadcast and all other rights of communication to the public) and the right to share equally in the exploitation of such works in all media, markets and languages and in any manner now known or hereafter devised.

(c) Right of first negotiation. Provided that the Picture is produced and released in accordance with the terms set forth herein, and neither PC nor GRE are in materially uncured breach of their respective obligations hereunder, GPX shall provide GRE and PC with a thirty (30) day right of first negotiation to provide their respective services with respect to any Picture sequels, prequels and remakes, and all other types of derivative works based thereon, intended for exploitation in any medium now or hereafter devised (including by way of illustration only, any form of theatrical, television or home video exploitation), provided that the commercial terms contained in this Agreement shall be considered a floor to such negotiations.

3. <u>Services</u>. GRE and GPX shall perform services customarily provided by producers in the motion picture industry. The Parties shall engage in commercially reasonable efforts to advance progress to production on the Picture, including without limitation, securing above the line talent and crew, securing below the line crew, obtaining financing and development of the script. The Parties shall use

reasonable, good faith efforts to inform each other of all prospective talent, financiers and distributors they intend to contact regarding the Picture, and each respective Party shall have the right, if readily available, to attend any meetings in connection therewith. Nevertheless, the Parties agree to consult with each other in a meaningful and significant manner on all matters related to the Picture, and to coordinate efforts with each other. The Parties each agree to make reasonable, good faith efforts to attend meetings together with all third-parties relating to financing, distribution, the script, the director, casting, and hiring of key personnel, whenever professionally possible, subject to the exceptions set forth herein. In the event one of the Parties is unable to attend certain meetings after receipt of timely notice of the same, the attending Party shall promptly notify the non-attending Party of the meeting's content and outcome. Also, the Parties agree to give reasonable updates to each other on their respective activities in connection herewith. The duties of the GPX managing members shall be to seek to provide the financing of the production budget of $6M, assign the rights of the script currently entitled, "Cul De Sac" to a single purpose production entity that is owned by the Parties in the same ratio as copyright is divisible hereunder (the Operating Agreement for which shall contain reporting, audit and all other customary provisions), and perform services usual and customary for producers in the motion picture industry. GRE and PC shall collectively perform services usual and customary for producers in the motion picture industry as well as provide a minimum of $6M in P&A funding which will be utilized by the Parties for the worldwide exploitation of the Picture through Vivendi Releasing. The implementation of the theatrical distribution and marketing plan will be mutually agreed upon by both Parties.

    4. Approval Rights. GRE and GPX shall have mutual approval rights with regard to any and all matters relating to the production and distribution of the Picture, and any and all business decisions in connection therewith. In the event of any disagreement relating to the property, GRE shall have the sole and final "tie-breaker" vote with respect to distribution and GPX shall have the sole and final "tie-breaker" vote with respect to production excluding concerning the selection of lead cast members on the Picture and the contents of the soundtrack which will require the unanimous agreement of the Parties, neither of which shall be unreasonably withheld or delayed. Neither party shall have rights in law or equity to challenge, object to, or recover damages based upon any decision made by the "tie-breaking" party pursuant to this paragraph. For the avoidance of doubt Geno Taylor (provided in all respects that PC and GRE provide the P&A requirements set forth herein), David Pritchard and Kip Konweiser are hereby deemed pre-approved as producers and Jeff Franklin is hereby pre-approved as director.

    5. Distribution. It is an essential condition of the Agreement that GRE has the right to cause the Picture produced by the Parties to be distributed by PC through its distribution deal with Vivendi Releasing in all of the markets and utilizing all of the services comprising that distribution relationship. As such The Parties hereby approve PC as the worldwide distributor for the Picture subject to the following terms which shall be memorialized under separate cover in a PC short-form distribution agreement and attached herein as Appendix A:

    (a) PC distribution fee shall be a 5% override ("the "Fee") on top of the rent-a-studio fee. provided that the "all-in" distribution fee inclusive of the override and the North American "rental-a-studio" fee shall not exceed 23% (the "Fee") unless mutually approved in writing by the Parties.

        (i) If domestic box office reaches $20M, the Fee shall reduce to four percent (4%).

        (ii) Should the domestic box office reach $40M, the Fee shall reduce an additional one percent (1%) to three percent (3%).

(b) PC shall provide a release for Picture on no less than 750 domestic screens within the first 30 days of commercial release.

(c) Distribution plan shall be mutually agreed upon by both Parties.

(d) P&A funds shall be expended according to a distribution budget approved by the Parties 6 months prior to the theatrical release of the picture. Such P&A funds shall be defined as monies spent for the domestic theatrical release of the Picture including prints, advertising, marketing, and publicity as may be approved by the Parties.

(e) Notwithstanding the foregoing, In the event that GPX is able to secure a written offer from one or more third party(ies), the commercial terms of which are more favorable overall (e.g. a higher screen commitment and/or P&A amount, more favorable distribution fee, etc.) than the terms being offered pursuant to PC's distribution agreement with Vivendi, then GRE's right to cause the Picture to be distributed by PC through its distribution deal with Vivendi Releasing in all of the markets and utilizing all of the services comprising that distribution relationship shall be rescinded along with the Fee payable to PC. GPX's ability to shop for another (non-Vivendi) deal in accordance with this paragraph shall in all respects be conducted in good faith and shall expire upon the date that is 30 days following the completion and delivery of the director's first cut of the Picture.

6. Compensation. Subject to approval of the completion guarantor, the Producer fees for each party shall be as follows: GRE shall receive a producer fee equal to 3.5% percent of the Picture budget (excluding finance costs, interest charges, completion bond fees, P&A and contingency amounts), which fee GRE shall be allowed to reflect as a finance fee for bonding and accounting purposes in the production budget, payable upon satisfaction of conditions precedent per paragraph 1 above and upon commencement of principal photography, and subject to a payment schedule which will be tied on a favored nations basis to payments made to all other producers which payment schedule must be mutually agreed upon by the parties. GPX shall split the remaining producer fees among its managing members or investors at GPX's sole discretion, which fees shall be equal to 3.5% of the Picture budget (excluding finance costs, interest charges, completion bond fees, P&A and contingency amounts) subject to bond company approval. Additionally, the Parties agree to a management and facilitation fee of 3 % of the P&A monies with 1.5% payable to GRE and 1.5% payable to GPX with an aggregate floor of $150k. In the event the aforementioned fees are prohibitive considering the overall budget parameters, etc., the Parties hereto shall agree to collectively reduce their fees on a pro-rata and pari passu basis, in a manner reasonably necessary to accommodate the progress of the Picture.

7. Credit. Provided that GRE is not otherwise in uncured material breach of its obligations pursuant to this Agreement, each of PC, GRE and GPX shall be accorded equal producer category credits and company logos on positive prints of the Picture in the main titles and in all advertising and promotion, including but not limited to movie trailers, posters, DVD jackets and paid advertisements on a favored nations basis. GRE and GPX shall each have the right to place their respective animated company logos prior to the beginning of the main titles of the Picture, as well as company presentation credit on separate cards immediately after the distributor's card. Credits on other forms of work embodying the Picture including, but not limited to, television programs and novelizations, shall be substantially the same as set forth in this section, unless otherwise agreed by the Parties. Producer credits shall be accorded as follows: "Executive Producer" credit, shall be accorded to Tony Chopelas and Producer credits to each of Geno Tayor and Danny Rodriguez. GPX

shall designate 2 individual Executive Producer and Producer category credits at GPX's sole election and additional Producer credits shall be afforded to Brad Kaaya and Jeff Franklin pursuant to their contractual agreements with GPX.. On-screen credits shall be no less favorable than that accorded anyone else in the main titles of the Picture, in terms of size, style and duration. No casual or inadvertent failure to comply with any of the provision of this clause shall be deemed a breach of this agreement by either Party. The Parties hereby expressly waive rights to injunctive or other equitable relief and relief shall be limited to the right to recover damages in an action at law.

8. <u>Waterfall</u>. The Parties hereto hereby agree that all Picture gross receipts shall be paid into a Collection Account set up with Fintage House (the "CAM"). The CAM shall name GPX, PC and GRE as parties and beneficiaries to the extent of their entitlements and shall provide for the following waterfall with respect to 100% of all gross receipts received from contracted distributors of the Picture, which shall include income derived by either party pursuant to the production and distribution of the Picture including without limitation, product integration money, tax incentives or rebates, discounts or rebates on advertisements:

(a) Collection Account fees and expenses (if any);

(b) Residuals and any other additional compensation that is or may become due to SAG, DGA, IATSE, AF of M and WGA under the applicable guild and union agreement, plus any payroll house fees and taxes due thereon (it being understood that if the aforementioned guilds and unions will agree to defer residuals hereunder until recoupment of P&A and production budget, then any amounts due pursuant to this sub paragraph (b) shall be paid thereafter);

(c) Mutually approved third party international sales agency fees (if any) and distribution fees;

(d) Completion Guarantor Sums (if any);

(e) Any and all deferments to third party participants to be mutually agreed upon;

(f) All subsequent revenues shall be split on a pro rata and pari-passu basis between the Parties (or any mutually approved third party investors) until the original investment is recouped. (i.e. GRE based on and assuming a $6M P&A investment would receive 1/2 and GPX based on and assuming a $6M production budget would receive 1/2 until each party has recouped a total of $6M each).

(g) After each party has recouped initial investment monies, the remaining gross receipts shall be paid as follows:
- 25% to GRE
- 10% to PC
- 35% to GPX
- 30% to be earmarked for payment of any mutually approved third party profit participations (e.g. profit participations to actors, director, etc), provided that any unallocated portions herein shall be split equally between GPX and PC.

9.A. <u>Representations and Warranties</u>.

(a) GPX Representations and Warranties: GPX is a limited liability company duly formed, validly existing, and in good standing within the state of its formation and qualified to do business in each state where such qualification is required as a material condition for its performance of this Agreement. GPX has taken all action necessary for this Agreement to be a legally binding and valid agreement enforceable in accordance with its terms except as such enforcement might be modified in the case of bankruptcy, insolvency or other similar laws. This Agreement does not conflict with or create a default under any other agreement to which GPX is bound. GPX has the financial capability to meet the GPX funding commitments in accordance with the terms of this Agreement. GPX represents that GPX owns all rights pursuant to the Option & Purchase Agreement, attached hereto as Exhibit B.

(b) GRE & PC Representations and Warranties: GRE & PC are each corporations duly formed, validly existing, and in good standing within the State of its formation and qualified to do business in each state where such qualification is required as a material condition for its performance of this Agreement. GRE and PC have each taken all action necessary for this Agreement to be a legally binding and valid agreement enforceable in accordance with its terms except as such enforcement might be modified in the case of bankruptcy, insolvency or other similar laws. This Agreement does not conflict with or create a default under any other agreement to which either GRE or PC are bound. GRE and PC each have the financial capability to meet their funding commitments in accordance with the terms of this Agreement.

9.B   Indemnifications:

(a) GPX INDEMNIFICATION: GPX agrees to indemnify and hold harmless GRE & PC and their respective officers, directors, advisors, managers, employees, agents, and attorneys from any and all losses, claims, proceedings, causes or action, suits or other damages arising from GPX's breach of the terms of this Agreement.

(b) GRE & PC INDEMNIFICATION: GRE and PC each (on a joint and several basis) agree to indemnify and hold harmless GPX and GPX's officers, directors, advisors, managers, employees, agents, and attorneys from any and all losses, claims, proceedings, causes or action, suits or other damages arising from GRE and/or PC's breach of the terms of this Agreement.

10. Miscellaneous.

(a) Attorney's Fees in the Event of Dispute. If any legal action, dispute, or other proceeding arises or is commenced to interpret, enforce or recover damages for the breach of any term of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees incurred in connection with that action, in addition to costs of suit.

(b) Entire Agreement. It is contemplated that a more formal agreement will be entered into by the Parties hereto covering the subject matter hereof, which agreement shall contain such standard terms as are customary in the Los Angeles motion picture industry for agreements of this type, subject to good faith negotiations not inconsistent with the terms specified herein. Unless and until such more formal agreement is executed, this Agreement shall constitute a binding contract between the Parties and supersedes any all discussions and written agreements between the Parties. No modification of or amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by the party to be charged.

(c) Amendments and Modifications: This Agreement may not be amended or modified other than by an agreement in writing signed by all of the Parties. Notwithstanding the foregoing, however, nothing shall preclude any two or more parties from agreeing in writing to a modification of their rights and duties with respect to each other, but no such agreement shall be binding on Parties to this Agreement who have not consented in writing thereto.

(d) Binding Nature of Agreement; No Assignment: This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, personal representatives, successors and assigns, except that no party may assign or transfer its rights or obligations under or interest in this Agreement without the prior written consent of the other parties hereto, other than as required hereunder in order to proceed with the terms and conditions of this Agreement.

(e) No Third-Party Beneficiaries: The terms and provisions of this Agreement are intended solely for the benefit of each Party hereto and their respective successors and permitted assigns, and it is not the intention of the parties to confer third-party beneficiary rights upon any other person.

(f) Severability. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(g) Successors and Assigns. This Agreement will be binding upon the heirs, executors, administrators and other legal representatives of the Parties and will be for the benefit of the Parties' successors and assigns.

(h) Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California. The Parties hereby consent to the sole and exclusive jurisdiction of the state courts of California and the federal courts located in the State of California as to any matter arising out of or relating to this Agreement. The Parties consent to venue in Los Angeles County.

(i) Participation in Drafting. Each Party has participated in, cooperated in, or contributed to, the drafting and preparation of this Agreement. In any construction of this Agreement, the same shall not be construed for, or against, any Party, but shall be construed fairly according to its plain meaning. Each Party has had the opportunity to consult with an attorney regarding its rights and obligations under this Agreement.

(j) Notices. Any notice to either Party in connection with this Agreement shall be deemed given and effective upon delivery, and confirmation thereof, by mail courier or facsimile at the addresses below, or such other address provided in writing:

> If to Gold River Film Fund:
> Tony Chopelas
> 2377 Gold Meadow Way
> Suite 100
> Gold River, CA 95670
> Tel: (916) 966-2550
> Fax: (916) 966-3374

Polychrome Pictures, LLC.

13400 Riverside Drive, Suite: 301

Sherman Oaks, California 91423

818-788-8908

Attn: Geno Taylor

With a copy to:

Edward W. Burns, Esq.
FREEBURG, NETTELS & SCHALDENBRAND
1155 Sportfisher Drive
Suite 120
Oceanside, California 92054
Tel: (760) 453-2189
Fax: (760) 453-2194

If to Gigapix Studios:
Gigapix Studios, LLC
9333 Oso Avenue
Chatsworth, CA 91311
Ph: (818) 592-0755
Email: dpritchard@gigapixstudios.com
Attention: David Pritchard

With a courtesy copy to:

Christopher J. Corabi
Attorney at Law P.C.
280 South Beverly Drive, Suite 205
Beverly Hills, California 90212
Phone: (310) 275-7568
Fax:   (310) 275-7561

(k) Confidentiality; Publicity: The Parties acknowledge that the transaction described herein is of a confidential nature and shall not be disclosed except to consultants, advisors and affiliates, or as required by law. None of the Parties hereto shall make any public disclosure of the terms of this Agreement, except as required by law or upon the prior written approval of all Parties. The Parties shall endeavor to make only those press releases or other public disclosures as are required by law; provided, however, that no press release or other public disclosure shall be made without the express written approval of the other Party.

(l) Facsimile; Counterparts. This Agreement may be executed by facsimile, in two or more counterparts by facsimile, each of which shall be deemed to be an enforceable original and all of which together shall constitute one enforceable instrument.

(m) No Assignment. GRE and/or GPX may not assign or transfer this Agreement, and/or any rights or obligations hereunder without the prior written consent of the other Party, and any attempt of assignment or transfer without such consent shall be void.

(n) <u>Execution of Further Documents</u>.  Each Party hereto agrees to execute all further and additional documents as may be necessary or desirable to effectuate and carry out the provisions of this Agreement.

**[signature page follows]**

Case 2:14-cr-00282-R   Document 175-2   Filed 11/06/14   Page 13 of 14   Page ID #:1889

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first written above.

Gold River Entertainment, LLC

By: Tony Chopelas
Its: Authorized Signatory

Polychrome Pictures, LLC

By: Danny Rodriguez
Its: Authorized Signatory

By: Geno Taylor
Its: Authorized Signatory

Gigapix Studios, Inc.

By: David Pritchard
Its: Authorized Signatory